IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BOBBIEJO DINESEN                        Case No. 3:13-CV-01554-MA

          Plaintiff,              OPINION AND ORDER

   v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

RICHARD F. McGINTY
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

HEATHER L. GRIFFITH
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Bobbiejo Dinesen seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, I affirm the final decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for SSI on December 16, 2009, alleging disability beginning March 8, 2009, due to hepatitis C, bipolar disorder, and attention deficit disorder.

Plaintiff's claims were denied initially and upon reconsideration.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on March 14, 2012, at which plaintiff appeared with her attorney and testified.  A vocational expert, Patricia B. Ayerza also appeared at the March 14, 2012 hearing and testified.  On June 28, 2012, the ALJ issued an unfavorable decision.  The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1979, plaintiff was 32 years old on the date of the ALJ's adverse decision.  Plaintiff completed school through the eighth grade but was in special education classes and has past

relevant work as a gas station attendant, certified nursing assistant, and inserter.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder and substance abuse. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform all exertional levels of work with the exception of a limitation to simple routine work not requiring complex written communications, no interaction with the general public, occasional interaction with coworkers, and no tandem task work.

At step four, the ALJ found plaintiff is unable to perform any past relevant work.   At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as line packaging worker and garment sorter. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from December 16, 2009, through the date of the decision.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate medical evidence and opinion of examining physician David N. Sweet Ph.D.; (2) the ALJ failed to properly consider medical evidence and opinion of treating physician Joel Suckow, M.D.; (3) the ALJ failed to consider treatment notes from Riley Crowder, a Qualified Mental Health Practitioner (QMHP); and (4) based on these errors, the ALJ posed an incomplete hypothetical to the Vocational Expert.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied  proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

## I. The ALJ Properly Considered the Medical Evidence

### A. Standards for Evaluating Physician's Opinions

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not

required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

**B. Dr. Sweet**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of examining physician David N. Sweet, Ph.D. On March 17, 2010, Dr. Sweet performed a psychological examination, interviewed the plaintiff, and indicated reviewing medical records from Polk County Mental Health dated January 11, 2010.[1] Plaintiff described a long history of mood swings from minute to minute. Tr. 335. Plaintiff also reported to Dr. Sweet that she has "slight schizophrenia" with a long history of auditory and visual hallucinations in the form of dark shadows and negative voices in her head. *Id.*

Dr. Sweet's mental status examination revealed that plaintiff was oriented to year, season, day, month, date, state, and city. Tr. 337. She could repeat three words immediately, six digits forward and four digits backwards, and spell the word "world" correctly. *Id.* Plaintiff was unable to perform serial sevens but

_____

[1] After careful review of the record, the only treatment notes from Polk County Mental Health is an Adult Behavioral Health Assessment based on examinations on November 24, 2009 and December 1, 2009. Tr. 293-301. In addition, Dr. Sweet indicated that the plaintiff was treated for bipolar disorder, schizophrenia, and attention deficit disorder at Polk County Mental Health; however, the record notes that the plaintiff was diagnosed with post traumatic stress disorder, cannabis dependence, alcohol dependence in early partial remission, and reported history of bipolar disorder. Tr. 301.

made two correct serial three calculations. *Id.* Plaintiff also was able to recall two out of three words immediately, could name the current and previous presidents of the United States, but had some difficulty with abstract reasoning. *Id.* Dr. Sweet diagnosed plaintiff with bipolar disorder, most recent episode unspecified; schizophrenia, paranoid type; attention deficit hyperactivity disorder, primarily inattentive type; and polysubstance dependence in early remission and assigned a Global Assessment Function (GAF) score of 40.[2] Tr. 339. Dr. Sweet noted plaintiff reported significant rapid mood swings, auditory and visual hallucinations and paranoid ideation. *Id.* Dr. Sweet opined that plaintiff cannot maintain the necessary concentration, pace, and persistence required on a daily basis at a job and that it is difficult for plaintiff to interact with people. Tr. 340.

Because non-examining psychologists' opinions contradicted Dr. Sweet's opinion,[3] the ALJ was required to provide specific and

---

[2]The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 31–40 indicates some impairment in reality testing or communication(speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed individual avoids friends, neglects family, and is unable to work). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV), p. 31–34 (4th ed. 2000).

[3]Dr. Sweet's opinion that plaintiff was unable to maintain the necessary pace, persistence and organization at a job on a daily basis is contradicted by non-examining psychologist Bill Hennings, Ph.D., who opined on March 5, 2010, that plaintiff could maintain concentration, persistence, and pace to perform

legitimate reasons supported by substantial record evidence to reject his opinion. *Bayliss*, 427 F.3d at 1216. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). In the decision, the ALJ gave Dr. Sweet's opinion "little weight" because: (1) it was primarily based on plaintiff's subjective reporting of symptoms; and (2) the psychological limitations were inconsistent with Dr. Sweet's own examination. Tr. 24. I conclude that the ALJ has provided specific and legitimate reasons to reject Dr. Sweet's opinion.

I begin by noting that plaintiff does not challenge the ALJ's negative credibility assessment. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ noted that plaintiff had been inconsistent in reports of her drug and alcohol use throughout the period at issue. Tr. 21, 274, 310, 320, 338. Despite that plaintiff does not contest the adverse credibility determination, I have carefully reviewed

---

simple repetitive tasks with occasional interaction with the general public and brief interactions with coworkers but is limited from work involving close coordination with coworkers. Tr. 68-70. This opinion was affirmed on reconsideration by Paul Rethinger, Ph.D. Tr. 83. The opinions of Drs. Hennings and Rethinger are unchallenged by plaintiff. Nevertheless, I have reviewed Drs. Hennings and Rethinger's opinions and conclude they are supported by substantial evidence.

the record in its entirety, and conclude that the ALJ's determination is readily supported by substantial evidence in the record.

Plaintiff contends that the inconsistency of drug use reported in the record is not so significant that Dr. Sweet's opinion should be entirely discounted, and that the ALJ erred in rejecting his opinion on this basis. I disagree. Plaintiff's inconsistent reports of drug and alcohol use support the ALJ's conclusion that plaintiff's self-reports are not reliable. Plaintiff attempts to minimize the disparity in her reported length of sobriety to Dr. Sweet in contrast with other providers. However, the record shows that in December of 2011, over a year after Dr. Sweet's March 2010 examination, plaintiff admitted using marijuana on a daily basis. Tr. 475. Additionally, Dr. Suckow's treatment notes show that in July of 2011, he questioned whether plaintiff was using drugs and alcohol when plaintiff reported being arrested for a DUII after taking a friend's medication. Tr. 488. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g.,* *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). Therefore, I conclude that the ALJ has provided a specific and legitimate reason to discount Dr. Sweet's opinion.

Additionally, it is clear that Dr. Sweet's diagnosis of schizophrenia and his opinions that plaintiff cannot maintain concentration, persistence, and pace on a daily basis and has difficulty interacting with people, rely in part on plaintiff's subjective reporting of symptoms. *See e.g., Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602. (ALJ properly discounted medical opinions based in large part upon claimant's own account of mental health symptoms and limitations). Dr. Sweet was the only physician to diagnose plaintiff with schizophrenia, and his examination reflects that plaintiff self-reported a history of schizophrenia. Moreover, plaintiff reported experiencing hallucinations to Dr. Sweet but denied experiencing these symptoms to nearly[4] all other treatment providers. Tr. 445-508. Indeed, a January 7, 2010, treatment note from Leah S. Bernard, M.D., indicated that plaintiff denied any mania, severe depression, hallucinations or paranoia, and again on July 23, 2010, plaintiff reported some post-partum depression but denied experiencing hallucinations or mania. Tr. 321, 351-352. Based on the information presented to Dr. Sweet, the ALJ could reasonably find that his opinion was based in part on plaintiff's unreliable self-reports.

---

[4]Plaintiff reported auditory and visual hallucinations one other time, during the adult behavioral health assessment with Polk County Mental Health. Tr. 293-301. Health providers recommended that plaintiff attend less than nine hours of out-patient therapy per week. Tr. 301.

Second, plaintiff appears to suggest that Dr. Sweet's opinion rested upon his examination findings, and not plaintiff's subjective symptom reporting. According to plaintiff, Dr. Sweet's opinion is based on medical signs he observed during the examination, including rapid and pressured speech, deficits in plaintiff's concentration, and a labile affect. Plaintiff contends that the ALJ selectively cited to evidence supporting the finding of mild to moderate functional limitations while ignoring medical evidence from Dr. Sweet's examination to support disability. Plaintiff further maintains that difficulty with judgment in practical and pragmatic situations and an inability to perform abstract reasoning support Dr. Sweet's opinion that plaintiff cannot maintain adequate concentration, persistence, and pace on a daily basis. Again, I disagree.

Although plaintiff disagrees with the ALJ's characterization of Dr. Sweet's examination as evidence of mild to moderate functional limitations, I conclude that the ALJ could reasonably find that Dr. Sweet's examination was inconsistent with his conclusory medical opinion. As described above, plaintiff was oriented to the current date, state, and city, could perform several serial 3 calculations, and could recall two out of three words immediately. Tr. 337. In contrast, Dr. Sweet opined, in a conclusory fashion, that plaintiff's "multitude of problems will make it difficult if not impossible for her to maintain competitive

employment." Tr. 339. Given that Dr. Sweet's mental status examination results are mild to moderate in nature, the ALJ reasonably found these results were inconsistent with Dr. Sweet's medical opinion that plaintiff was unable to work. *Tonapetyan,* 242 F.3d at 1149. Even if I were to conclude differently, the ALJ's determination was reasonable and is supported by substantial evidence in the record, and must be upheld. *Batson,* 359 F.3d at 1193. I conclude that the ALJ's second reason, when combined with the ALJ's first reason, amounts to specific and legitimate support for discounting Dr. Sweet's opinion. Accordingly, the ALJ did not err in evaluating Dr. Sweet's opinion.

### C. Dr. Suckow

Plaintiff argues that the ALJ failed to properly evaluate medical evidence from her treating physician, Joel Suckow, M.D. The record indicates that Dr. Suckow has treated plaintiff since September 21, 2010. Tr. 424. The most recent treatment note from Dr. Suckow is dated March 30, 2012. Tr. 445. Susan M. Polvi, a Qualified Mental Health Practitioner (QMHP), working with Dr. Suckow, interviewed plaintiff and provided a description of the mental status examination results. Ms. Polvi's mental health assessment report, dated September 21, 2010, was signed by Dr. Suckow. Tr. 433. Ms. Polvi noted that plaintiff was dressed appropriately with adequate hygiene, presented with normal speech, and demonstrated intact memory and fair insight and judgment. Tr.

430. In September of 2010, Dr. Suckow initially diagnosed: bipolar disorder I, general anxiety disorder, and polysubstance dependence in sustained partial remission, and assigned a GAF score of 50.[5] Tr. 432. Based on his examination completed on October 8, 2010, Dr. Suckow opined that plaintiff "displayed no specific signs or symptoms that indicated an acuity needing immediate psychiatric medical intervention." Tr. 414. The ALJ gave Dr. Suckow's October 2010 opinion "significant weight."

Plaintiff argues that ALJ gave "significant weight" to a selective medical opinion that supports a finding of non-disability while failing to similarly weigh other medical evidence from Dr. Suckow. I disagree.

In the decision, the ALJ cited to Dr. Suckow's medical treatment notes and the treatment notes of a QMHP working in Dr. Suckow's practice from September 2010 through March 2012. Tr. 18, 21-23. For example, the ALJ cited to Dr. Suckow's treatment note from July 2011, describing Dr. Suckow's decision not to prescribe plaintiff benzodiazepines because plaintiff's history and presentation suggested she might be using drugs again. Tr. 22, 473. The ALJ discussed Dr. Suckow's January 2011 treatment note, where Dr. Suckow noted that plaintiff was completely oriented, had intact

---

[5] A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *DSM-IV* at 31-34.

memory, and maintained attention during the examination. Tr. 22, 397. The ALJ further indicated that Dr. Suckow noted in December 2011, that plaintiff reported using marijuana to help with her appetite. Tr. 22. The ALJ also cited to Dr. Suckow's August 2011 note, where he indicated that plaintiff desired to restart therapy after previously being closed to therapy after a no-show in excess of 90 days. Tr. 22. The ALJ also considered Dr. Suckow's GAF score of 51[6] on October 8, 2010. Tr. 18.

In sum, Dr. Suckow generally noted logical and concrete thought processes, intact memory, and no signs of psychosis or mania. *See, e.g.,* Tr. 390, 402, 472, 484, 490. The ALJ noted that "treatment notes show that when the claimant maintains sobriety from drugs and alcohol as well as complies with mental health treatment, her symptoms improved." Tr. 22. Dr. Suckow's notes support this conclusion. *See e.g.,* Tr. 390, 402, 480, 483. I conclude that when viewing the record as a whole, the ALJ's evaluation of Dr. Suckow's notes are consistent with the overall mild mental status examination findings in the record.

Plaintiff also contends that the ALJ failed to explain why the diagnosis of attention deficit disorder was not included in the finding of severe impairments at step two or considered in the RFC

---

[6]A GAF of 51-60 indicates moderate symptoms (flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *DSM-IV* at 31-34.

finding. Dr. Sweet and Dr. Suckow diagnosed plaintiff with attention deficit disorder or attention deficit hyperactivity disorder. Tr. 339 and 391. "ALJ's inquiry at step two "is a de minimis screening device to dispose of groundless claims."" *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). Once a claimant meets the threshold determination of having a valid disability claim, the sequential evaluation process continues. 20 C.F.R. § 416.920(a)(4). Step two was resolved in plaintiff's favor when the ALJ found that plaintiff has a severe mental impairment. The ALJ also indicated that "the record contains a variety of diagnoses, which share symptoms. [The ALJ] has considered all symptoms regardless of the actual diagnosis." Tr. 18. As discussed above, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. *Valentine,* 574 F.3d at 691-93 (ALJ appropriately accounted for limitations in the RFC). The ALJ's decision as well as Dr. Hennings' medical opinion, discussed below, supports the conclusion that attention deficit disorder and any resulting symptoms were factored into the RFC finding. Thus, plaintiff's argument fails.

Finally, plaintiff contends that the ALJ erred in failing to include the alleged limitation related to work stress when considering Dr. Suckow's opinion contained in a Feb. 25, 2011 medical source statement from Kylie Fonteno, a physician's assistant working with Dr. Suckow. The medical source statement

from Ms. Fonteno notes that the psychiatric portion was filled out by Dr. Suckow, but Dr. Suckow did not sign the statement. Tr. 438-439. The medical source statement indicates that plaintiff has a moderate limitation in handling work stress. Tr. 439. Plaintiff argues in a conclusory fashion that although Dr. Suckow did not sign the medical source statement, Dr. Suckow concurred with this opinion because Ms. Fonteno works with Dr. Suckow. Plaintiff's argument fails.

Although Ms. Fonteno works with Dr. Suckow, Dr. Suckow provided his own treatment notes and opinions. Tr. 410-415, 427-432. Dr. Suckow's own records do not contain any discussion of a moderate limitation in plaintiff's ability to deal with work stress, and there is no evidence in the record before me indicating that Dr. Suckow endorsed Ms. Fonteno's opinions.

Moreover, the record contains no actual treatment notes from Ms. Fonteno, and instead contains only the Feb. 25, 2011 medical source statement. Tr. 443. The ALJ considered Ms. Fonteno's entire report and accorded it "little weight" because it was not consistent with the medical evidence. Tr. 24. This rationale is supported by substantial evidence. *See, e.g.,* Tr. 390, 394, 397, 402, 408, 413, 424, 484, 495. Tellingly, the plaintiff does not challenge the ALJ's treatment of Ms. Fonteno's medical source statement.

16 - OPINION AND ORDER

In summary, I conclude that the ALJ did not err in evaluating Dr. Suckow's opinion, and has provided specific and legitimate reasons backed by substantial evidence in the record as a whole, for according his opinion significant weight.

### D. Riley Crowder

Plaintiff argues that the ALJ did not consider treatment notes and opinions from Riley Crowder, a QMHP working in Dr. Suckow's office. The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694. Contrary to plaintiff's suggestion the ALJ discussed Ms. Crowder's group therapy notes, although the ALJ did not identify Ms. Crowder by name in the decision. Tr. 23. As the ALJ accurately indicated, plaintiff reported positive changes and reduced depression. Tr. 445-453. In addition, Dr. Suckow's treatment notes were similar to Ms. Crowder's notes, including Ms. Crowder's GAF score of 50, all of which the ALJ considered. *See, e.g.,* Tr. 21-23, 390, 402, 472, 484, 490. Ms. Crowder discussed plaintiff's treatment goals, but she did not include any opinion regarding functional limitations. Tr. 445-453, 462-464. It is clear that the ALJ considered Ms. Crowder's treatment notes.

## II. The ALJ Did Not Err in Assessing the RFC

Plaintiff also argues that the ALJ erred by failing to include plaintiff's moderate mental functional limitations into the RFC.

According to plaintiff, the ALJ was required to translate the step three paragraph B findings into work-related functions in the RFC. Plaintiff argues that the ALJ failed to include limitations relating to her memory problems, math skills, and abstract reasoning into the RFC. Plaintiff's argument misses the mark.

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss*, 427 F.3d at 1217 (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

However, plaintiff cites mental status examination results rather than actual functional limitations assessed by a medical source. Tr. 337-339. *See* Pl. Br. 9-10. In this case, in the RFC, the ALJ limited plaintiff to "simple" routine work as defined in 20 C.F.R. § 416.968(a). Dr. Sweet opined that the claimant would not have the ability to maintain concentration, persistence, and pace, but as discussed above, the ALJ appropriately gave this medical opinion little weight. Tr. 339-340. Aside from Dr. Sweet's appropriately discredited opinion, plaintiff does not identify any specific, credited medical evidence establishing greater

limitations.    Indeed, the unchallenged credited medical evidence establishes otherwise. When fashioning plaintiff's RFC, the ALJ specifically discussed the evidence from agency non-examining physicians, who opined that plaintiff is capable of performing "at least simple routine tasks." Tr. 316. Bill Hennings, Ph.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment (MRFC) on March 5, 2010. Tr. 67-70. In the MRFC, Dr. Hennings opined that plaintiff had moderate limitations in only one category: (1) the ability to carry out detailed instructions. Tr. 69. Importantly, Dr. Hennings indicated that plaintiff was not significantly limited in her "ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. On October 13, 2010, Paul Rethinger, Ph.D. affirmed Dr. Hennings's MRFC. Tr. 83.

Citing the evaluations by Drs. Hennings and Rethinger, the ALJ gave the opinions that plaintiff was limited to simple routine tasks "significant weight." Tr. 24. Additionally, the ALJ found that when plaintiff is medication compliant and maintains sobriety from drugs and alcohol, her symptoms improved. Tr. 22. The ALJ discussed treatment notes from Dr. Suckow, plaintiff's treating mental health physician, that consistently indicated normal speech, normal psychomotor activity, logical thought process, intact memory

19 - OPINION AND ORDER

and maintained attention.   Tr. 22, 397, 402, 405, 430, 435, 484.
The ALJ's findings are supported by substantial evidence.

Therefore, the RFC limiting plaintiff to simple and routine
tasks was consistent with the credited medical evidence of record
and relevant Ninth Circuit law. Plaintiff has identified no
specific medical testimony establishing limitations in
concentration, persistence, and pace that were not accounted for in
the ALJ's decision. The ALJ was not required to include plaintiff's
alleged limitations with memory, math skills, and abstract
reasoning into the RFC. Accordingly, I find no error in the ALJ's
RFC assessment.

## III.  **The ALJ Did Not Err in the Hypothetical Posed to the VE**

Likewise, plaintiff contends that the ALJ's hypothetical to
the VE did not include limitations in math skills, and that the VE
identified jobs that require math skills beyond plaintiff's
demonstrated ability. Plaintiff's argument is misplaced.

Plaintiff again conflates examination findings with actual
functional limitations. The ALJ is required to pose a hypothetical
composed of only limitations that the ALJ found credible and
supported by substantial evidence in the record. *Bayliss*, 427 F.3d
at 1217; *see also Magallanes v. Brown*, 881 F.2d 747, 756-57 (9th
Cir. 1989) (holding that it is proper for an ALJ to limit a
hypothetical to restrictions supported by substantial evidence in
the record). In his examination, Dr. Sweet noted a finding of

difficulty in performing some mathematical calculations, which he then translated into a functional limitation that plaintiff was unable to maintain concentration, persistence, and pace on a daily basis. Tr. 337, 339. I should note that at the time of Dr. Sweet's examination, plaintiff had significantly reduced her medications due to her pregnancy. Tr. 338. As discussed above, the ALJ appropriately accorded Dr. Sweet's opinion "little weight," and the overall record indicates relatively normal findings relating to maintaining concentration. Tr. 390, 402, 480, 483. Thus, the ALJ did not err in posing a hypothetical to the VE and identifying other jobs that plaintiff can perform at step five.

Moreover, the job of "garment sorter" identified[7] by the VE does not require substantial use of math skills. A mathematical development level of two, as cited by plaintiff, is part of the DOT

---

[7]The ALJ found two jobs, "garment sorter" and "line packaging worker" that plaintiff could perform at step five, based on VE testimony. However, the DOT number given by the VE does not match the job title of "line packaging worker." Relying solely on the "garment sorter" job, the VE identified 49,000 jobs nationally and 700 jobs in Oregon. Tr. 25. The ALJ appropriately concluded that garment sorter job exists in significant numbers. *Compare Beltran v. Astrue*, 700 F.3d 386, 389-390 (9th Cir. 2012) (holding that 135 jobs regionally and 1,680 jobs nationally did not constitute a significant number of jobs that plaintiff could perform) *with Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (holding that 2,300 jobs in San Diego County and 64,000 jobs nationally constitute a significant number of jobs that plaintiff could perform) *and Mitchell v. Colvin*, No. 13-35059, 2014 WL 3866458, at *2 (9th Cir. Aug. 7, 2014) (finding that 1,300 regional and 41,000 national jobs constitutes a significant number of jobs). Thus, the ALJ did not err in his step five finding.

General Educational Development (GED) scale that "embraces those aspects of education which are required of the worker for satisfactory job performance." *Dictionary of Occupational Titles* (DOT), Appendix C § III. "The GED definition trailers describe the level of education...generally required for the job; GED trailers may inform but do not necessarily impose job requirements." *Chase v. Colvin,* No. 1:12-CV-00884-AA, 2013 WL 3821630, at *3 (D. Or. July 22, 2013).

In *Chase*, the court held that the jobs identified by the VE did not require any computation or use of math skills based on the duties described for each job in the DOT. *Id.* The DOT describes the duties of a garment sorter as "sorts finished garments such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. [A garment sorter] may fold and package garments in boxes and bags." DOT §222.687-014. Similar to *Chase*, I conclude that as described in the DOT, "garment sorter" does not involve any computation or math skills beyond plaintiff's math skills. *Id.* Thus, the ALJ's finding that plaintiff can perform the job of "garment sorter" is supported by substantial evidence.

I have not identified any error committed by the ALJ and therefore, the hypothetical posed to the VE contained all the limitations deemed credible by the ALJ and supported by substantial evidence in the record. Accordingly, the ALJ could rely upon the

VE testimony. *Valentine*, 574 F.3d at 694; *Stubbs-Danielson*, 539 F.3d at 1175-76.

## **CONCLUSION**

For the reasons stated above, the Commissioner's final decision is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this *19* day of NOVEMBER, 2014.

Malcolm F. Marsh
United States District Judge